IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

vs.   3:03cr126/LAC
   3:04cv454/LAC/MD

DONALD GENE ENGLISH

## REPORT AND RECOMMENDATION

This matter is before the court upon a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255 (doc. 24). The government has filed a response (doc. 28) and the defendant has filed a reply (doc. 32). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). The court conducted an evidentiary hearing on July 19, 2005. After a careful review of the record and the evidence and arguments presented, it is the opinion of the undersigned that the motion should be denied.

**I. BACKGROUND**

Defendant was charged in a two count indictment with driving under the influence[1] and driving while license revoked with knowledge. (Doc. 1). He pleaded guilty to count one of the indictment, with the understanding that count two would be dismissed at sentencing. (Doc. 14). He agreed to the facts as outlined by the government at the rearraignment and the fact of his prior DUI convictions (doc. 14 at 7-10), acknowledged

---

[1] This charge was a felony because defendant had at least six prior convictions for the same offense. (Doc. 27 at 8, doc. 26 at 6).

that he faced between thirty days and five years imprisonment in accordance with Florida law (doc. 14 at 10), and indicated his satisfaction with counsel. (Doc. 14 at 13). On June 23, 2004, defendant was sentenced to a term of 60 months imprisonment, a $1,000 fine, and a term of three years supervised release. He was advised of his right to appeal, but he did not appeal.

The instant motion was filed pursuant to the prison mailbox rule on December 15, 2004. The defendant raises three main areas of concern, contending: that the court lacked jurisdiction, that counsel was constitutionally ineffective, and that his sentences of imprisonment and supervised release were excessive or improper.

## II. LEGAL ANALYSIS

### General Standard in § 2255 cases

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law or (4) is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999). As explained by the Eleventh Circuit, "[r]elief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). "[A] non-constitutional error that may justify reversal on direct appeal does not generally support a collateral attack on a final judgment, unless the error (1) could not have been raised on direct appeal and (2) would, if condoned, result in a complete miscarriage of justice." *Lynn*, 365 F.3d at 1232-33 (citations omitted); *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962) (error of law does not provide basis for collateral attack unless claimed error constituted a "fundamental defect which inherently results in a complete miscarriage of

justice."). The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2678, 2649, 91 L. Ed. 2d 397 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent. . . ."

Ineffective assistance of counsel

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. *Massaro v. United States,* 538 U.S. 500, 503, 123 S.Ct. 1690, 1693, 155 L.Ed.2d 714 (2003); *see also United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002); *United States v. Jiminez*, 983 F.2d 1020, 1022, n. 1 (11th Cir. 1993). To show a violation of his constitutional right to counsel, defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d (1984); *Williams v. Taylor*, 529 U.S. 362, 390, 120 S.Ct. 1495, 1511, 146 L.Ed.2d 389 (2000). "*Strickland's* two-part test also applies where a prisoner contends ineffective assistance led him or her to enter an improvident guilty plea." *Yordan v. Dugger,* 909 F.2d 474, 477 (11th Cir. 1990) (citing *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)). In applying *Strickland*, the court may dispose of an ineffective assistance claim if defendant fails to carry his burden on either of the two prongs. 466 U.S. at 697, 104 S.Ct. at 2069.

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Id*. at 688, 104 S.Ct. at 2065; *see Atkins v. Singletary*, 965 F.2d 952 (11th Cir. 1992). "[R]eviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." *Yordan v. Dugger*, 909 F.2d 474, 477 (11th Cir. 1990) (citing *Harich v. Dugger*, 844 F.2d 1464, 1469 (11th Cir. 1988); *Chandler v. United States,* 218 F.3d 1305, 1314 (11th Cir. 2000); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled

to error-free representation")).  Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.  To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take."  *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis in original).

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.  For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him."  *Lockhart v. Fretwell*, 506 U.S. 364, 369-70, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).  Defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687). Or in the case of alleged sentencing errors, defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. *Glover v. United States*, 531 U.S. 198, 203-04, 121 S.Ct. 696, 700-01, 148 L.Ed.2d 604 (2001).  A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance."  *Id.*

To establish ineffective assistance, defendant must provide factual support for his contentions regarding counsel's performance.  *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir.), *cert. denied*, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987).  Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (citing *Blackledge*, 431 U.S. at 74, 97 S.Ct. at 1629).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail

. . . are few and far between." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000). This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000), *cert. denied*, 122 S.Ct. 234 (2001).

Jurisdiction

Defendant first contends that the government did not have territorial jurisdiction over the site of the instant offense, because he did not operate his motor vehicle within the special maritime or territorial jurisdiction of the United States, as alleged in the indictment. He further maintains that counsel was ineffective for failing to discover that the court lacked subject matter jurisdiction.

Evidence in the parties' submissions and presented at the evidentiary hearing shows there are parts of the Pensacola Naval Air Station ("NAS" or "the base") over which the United States has neither exclusive nor concurrent jurisdiction, but only proprietary jurisdiction. Defendant contends that he operated his vehicle only in that part of the base over which the government has proprietary jurisdiction. The government concedes that if defendant stayed wholly within the proprietary jurisdiction of the base, this court never had jurisdiction over the defendant's case. The issue is therefore dependent on the facts and evidence adduced at the evidentiary hearing.

Defendant's exhibit 3 is an aerial view of the approach to the NAS main gate. The evidence at the hearing disclosed, and the exhibit demonstrates, that a vehicle entering the base travels generally from north to south, first crossing Bayou Grande on a four lane, undivided bridge, and entering the proprietary jurisdiction part of the base shortly before it exits the bridge. Thus, while a vehicle exiting the bridge is technically on the base, it has not crossed into the base's exclusive jurisdiction. The distance from the end of the bridge to the main gate is 425 feet, and the larger part of this area is within the base's exclusive jurisdiction. The issue for the court's determination is where defendant operated his vehicle in relation to the line between the base's proprietary jurisdiction and its exclusive

jurisdiction (the jurisdictional line). If the defendant crossed the jurisdictional line, the court has subject matter jurisdiction; if he did not, the court lacks such jurisdiction.

The exact distance from the end of the bridge to the jurisdictional line has not been proven, but defendant's exhibit 3 exhibit confirms that the distance from the end of the bridge and the main gate is 425 feet. Scaling the photo in the exhibit is imprecise, but at the very most the distance from the end of the bridge to the jurisdictional line is 30 feet. Thus, by traveling approximately 30 feet beyond the end of the bridge, a vehicle traveling the path that defendant took crosses the jurisdictional line.

Defendant says he did not go that far. He testified that he stopped just as he left the bridge, realized that he was in the wrong place, and waited for oncoming traffic to clear so that he could make a u-turn and go back across the bridge. For the sake of this discussion the court will accept defendant's implied theory that had he successfully turned around at that point, he would never have crossed the jurisdictional line.

The government's witness, Officer Pogue, testified that he was on duty at the gate when he saw the defendant's vehicle approaching the gate. Because of security concerns brought on by the September 11, 2003 terrorist attack, massive barriers had been set up outside the gate to slow any vehicle approaching the base. These consisted of large, plastic, water-filled barricades arranged so that a vehicle must slowly negotiate a serpentine path to reach the gate. Officer Pogue testified that he saw defendant's vehicle approaching, and that the defendant passed the first barricade but stopped at the second. Officer Pogue estimated that this point was approximately 80 feet from the front gate, well within the exclusive jurisdiction of the base. Officer Pogue motioned the car to approach. Defendant came forward and stopped. The officer motioned again and the vehicle came up to the gate. It was then that the officer developed his suspicion that defendant was driving under the influence of alcohol and processed the defendant for DUI.

At the hearing, defendant's counsel pointed to several discrepancies in the officer's current version of events. Defendant's exhibit 2 is the first page of the incident report filled out by Officer Pogue. Under the heading LOCATION OF OFFENSE the officer marked "Outside U.S. & Possessions." (The only other choice was "U.S. & Possessions."). Officer

Pogue had no explanation on why he had marked the report that way. Defendant's counsel also pointed out that under the heading STATUTORY BASIS Officer Pogue had marked "F" for Foreign. Again, Officer Pogue had no explanation for this.

As to the latter issue, defendant is clearly mistaken. In the key to the statutory basis codes, "F" means Federal. Foreign is coded as "X." Moreover, marking the "Outside U.S. & Possessions" block was an obvious scrivener's error. First, on the report Officer Pogue noted that the offense took place on a "Highway/Road/Alley/Sidewalk, MAIN GATE NAS PENSACOLA," and he answered the question "ON BOARD MILITARY INSTALLATION?" with "YES." By this, he clearly intended to state that the offense took place on the base. Second, defendant interprets "Outside U.S. & Possessions" to mean "Outside U.S. [Navy's exclusive jurisdiction] & Possessions," but that takes the quoted language too far. "Outside U.S. & Possessions" unquestionably means outside of the United States and in a foreign country. This interpretation is buttressed by noting that the only other choice on the form was "U.S. & Possessions." Thus, an officer filling out the form is asked whether the offense took place either in this country or in some other country. This is not a surprising choice given the Navy's world-wide operation. The defendant's implication that Officer Pogue intended to state that the offense occurred within this country but beyond the Navy's jurisdictional line is without merit.

The second area of discrepancy in Officer Pogue's testimony relates to the citations he filled out. There he noted "a green in color vehicle approached the main gate and stopped short of the barricade. I approached that vehicle and asked for driver's license of the operator." (Defendant's exh. 6). This, defendant contends, is very different from Officer Pogue's hearing testimony. In fact defendant testified that when he stopped initially, he did not move again, and that Officer Pogue did not motion him forward, but walked up to him. The above-quoted citation language appears at first blush to support defendant's version.

On closer examination, however, it does not. First, as Officer Pogue explained, he does not write down every possible detail when he fills out a citation. That certainly would be true in this case, where the issue Officer Pogue was concerned about was whether

defendant was operating a motor vehicle while impaired, not the exact place where the vehicle stopped.  When the stopping place became an issue Officer Pogue filled in the necessary details.  Second, the defendant's claim is illogical.  By his version, Officer Pogue left his post, at night, and walked approximately 400 feet toward the bridge (as the government points out, more than a football field's length) to talk to defendant, while defendant's vehicle sat in the roadway blocking the traffic behind him.  Finally, and very importantly, the defendant's recollection is questionable, as defendant admitted on the stand that he was under the influence, that he had consumed five drinks, and that he was intoxicated, although he denied being drunk, because there are degrees of drunkenness, and he was "not drunk drunk."

For all of the forgoing reasons, the court rejects defendant's version of events to the extent that they are inconsistent with Officer Pogue's testimony, and finds Officer Pogue's version of events both more logical and fully credible.  The court therefore finds that when defendant first stopped his vehicle he was approximately 80 feet from the main gate, meaning that he was approximately 300 feet inside the exclusive jurisdiction of the base.  Based on this factual finding, the court determines that defendant operated his motor vehicle within the exclusive jurisdiction of the United States.  This court therefore had subject matter jurisdiction, and defendant's jurisdictional claim must fail.  Counsel was not ineffective for failing to investigate this issue.

Ineffective assistance of counsel:  Failure to file an appeal

The other issue addressed at the evidentiary hearing is whether counsel was ineffective because he failed to file an appeal.  If a defendant specifically instructs his attorney to file a notice of appeal, a lawyer who disregards this instruction acts in a manner that is professionally unreasonable.  *Roe v. Flores-Ortega*, 528 U.S. 470, 120 S.Ct. 1029, 1035, 145 L.Ed.2d 985 (2000) (citing *Rodriguez v. United States*, 395 U.S. 327, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969); *Peguero v. United States*, 526 U.S. 23, 28, 119 S.Ct. 961, 143 L.Ed.2d 18 (1999)).  Since a defendant whose lawyer fails to file an appeal upon request has been denied an entire judicial proceeding, prejudice is presumed and the

defendant is entitled to a belated appeal. *Id.* However, in cases where a defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, the question whether counsel has performed deficiently by not filing a notice of appeal is analyzed as follows:

> [T]he question . . . is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal. We employ the term "consult" to convey a specific meaning - advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes. If counsel has consulted with the defendant, the question of deficient performance is easily answered; Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal. *See supra* 1034-1035. If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance.

*Flores-Ortega,* 528 U.S. at 478, 120 S.Ct. at 1035. The *Flores-Ortega* Court rejected a bright-line rule that counsel must always consult with a defendant regarding an appeal:

> We instead hold that counsel has a constitutionally-imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all the information counsel knew or should have known . . . . Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings.

*Id.,* 528 U.S. at 480, 120 S.Ct. at 1036.

In cases where a defendant has not specifically instructed his counsel to file a notice of appeal, a *per se* prejudice rule does not apply, rather, a defendant must demonstrate a reasonable probability exists that, but for counsel's deficient performance, he would have timely appealed. *Id.* at 1038, 1040. "Evidence that there were nonfrivolous grounds for

appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant in making this determination." *Id.* at 1039.

From the testimony adduced at the hearing, the thrust of defendant's argument on the ineffective assistance of counsel failure to appeal issue is as follows: he was told that if he pleaded guilty he would most likely get a three point reduction in his sentencing score because he had accepted responsibility, and that he would be looking at a sentence in the range of two to two and one-half years in prison; his belief that the court would give him a reasonably light sentence was reinforced when in the proceeding immediately before his sentencing a serial bank robber was given a five year sentence; he was shocked when his acceptance of responsibility was ignored and he was sentenced to the maximum possible sentence; he told his lawyer, Mr. Griffith, that he wanted to appeal and instructed him to do so; he followed up on his requests, and it was months later that he found out no appeal had ever been filed.

The credible testimony and documentary proof does not support this version of the facts. As noted above, defendant pleaded guilty to felony DUI on March 29, 2004, at which time the court dismissed the second count, driving with a suspended license, on the government's motion. Mr. Griffith had explained to defendant that the court might give him consideration for accepting responsibility by pleading guilty, but he made no guarantee, nor did he phrase his advice in terms of the United States Sentencing Guidelines, since this was not a guidelines case. Defendant says he was told otherwise, but the record clearly refutes this. The court told defendant at rearraignment that the federal Sentencing Guidelines did not apply, and defendant indicated that he understood (doc. 27 at 11).

Mr. Griffith testified that he was as dismayed by the sentence as defendant, but told defendant and defendant's mother, who attended sentencing, that the sentence was legal, and that appealing it would be a waste of time and money. Five days after the oral pronouncement of sentence Mr. Griffith visited defendant at the local jail and discussed the possibility of appealing. (Evidentiary hearing, defendant's exhibit 4). Mr. Griffith told defendant that the sentence, although surprisingly harsh, was legal, and that appealing would accomplish nothing. Defendant told Mr. Griffith that he did not want to appeal. Mr.

Griffith memorialized this in an office memorandum dated June 16. On June 18 Mr. Griffith wrote defendant explaining the terms of the sentence, and on June 23 wrote him a separate letter confirming defendant's decision not to appeal. (Evidentiary Hearing, Government's Exh. 2). The written judgment and sentence, which triggers the running of the appeal period, was entered on June 21, meaning that as of the date of the last letter, eight days remained within which defendant could file a notice of appeal. Defendant did not reply to the June 23 letter, nor did he write to Mr. Griffith directing him to appeal.

At the evidentiary hearing Mr. Griffith was asked to explain the difference between his testimony - that defendant did not tell him to appeal - and the unsworn letter submitted as part of the government's memorandum. In that letter Mr. Griffith stated only that he told defendant that there was not a basis for appeal, but notably did not say that defendant told him he did not want to appeal. Mr. Griffith explained that at the time he signed the letter for the government's counsel, he did not have his entire file,[2] but that he had finally located it the night before the hearing. Hurricane Ivan hit the Pensacola area in September 2004, causing extensive loss of property, and Mr. Griffith's file storage was adversely affected. At the hearing, therefore, the government was able to submit the June 23, 2004 letter from Mr. Griffith to his client, in which counsel memorialized his understanding that his client did not wish to appeal. (Evidentiary Hearing, government's exh. 2). The court finds this explanation of the apparent discrepancies to be credible.

Defendant's mother testified that she discussed appeal possibilities with Mr. Griffith after sentencing, but agreed that she did not instruct him to appeal. Moreover, she did not confirm an earlier statement in an affidavit she signed, in which she stated that she told Mr. Griffith that defendant "wanted to appeal the sentence nevertheless." (Doc. 32, attachment).

Finally, defendant's testimony lacks credibility. He bases his desire to appeal on his claim that the court specifically told him that he would get credit for acceptance of responsibility. However, the rearraignment transcript contains no such statement by the

---

[2]His letter does state, however, "after reviewing my file."

court. Defendant also testified that he was expecting a guidelines sentence because he had never been told that the guidelines did not apply. This is also refuted by the record, because the court specifically told defendant that the guidelines did not apply, and defendant indicated not only that he understood, but that he had discussed this with counsel. (Doc. 27 at 11-12). Defendant has tried to create an after-the-fact case for allowing him to file an out-of-time appeal, but his version of the facts is either not supported by the record or is directly refuted by it. For all of the foregoing reasons, the court finds that defendant did not instruct Mr. Griffith to file an appeal in his behalf in a timely manner.

Excess Sentence and Term of Supervised release

Finally, defendant contends that the five year sentence imposed by the court was in excess of the guideline sentence he would have received in the state of Florida and that it was improper for the court to impose a term of supervised release. The government contends that these claims are procedurally barred. Defendant seeks to defeat the procedural bar by contending that counsel was ineffective for failing to raise these issues.

Issues which could have been raised on direct appeal are generally not actionable in a Section 2255 motion and will be considered procedurally barred. *Lynn v. United States,* 365 F.3d 1225, 1234-35 (11th Cir. 2004); *Bousley v. United States,* 523 U.S. 614, 622, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998); *Jones v. United States,* 153 F.3d 1305, 1307 (11th Cir. 1998); *United States v. Frady,* 456 U.S. 152, 162-166 (1982). A ground is "available" on direct appeal when "its merits can be reviewed without further factual development." *Mills v. United States,* 36 F.3d 1052, 1055 (11th Cir. 1994), *cert. denied,* 131 L.Ed.2d 856 (1995). This procedural bar encompasses constitutional claims as well. *See Reed v. Farley,* 512 U.S. 339, 354, 114 S.Ct. 2291, 2300, 129 L.Ed.2d 277 (1994) (citing *Wainwright v. Sykes,* 433 U.S. 72, 84, 97 S.Ct. 2497, 2505, 53 L.Ed.2d 594 (1977) (applying cause and prejudice standard to constitutional claims)). Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a Section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error.

*Bousley v. United States*, 523 U.S. 614, 622, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998); see also *Mills, supra*; *Cross v. United States*, 893 F.2d 1287, 1289 (11th Cir.), *cert. denied*, 498 U.S. 849, 111 S.Ct. 138, 112 L.Ed.2d 105 (1990).

Ineffective assistance of counsel can constitute cause in the procedural default analysis only if defendant can affirmatively show that counsel's performance was constitutionally inadequate. *See Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); see also *Orazio v. Dugger*, 876 F.2d 1508 (11th Cir. 1989). Movant must show both that counsel's performance fell below an objective standard of reasonableness and that he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Failure to show prejudice is fatal to a claim of ineffective assistance. *Strickland*, 466 U.S. at 697; *Tafero v. Wainwright*, 796 F.2d 1314 (11th Cir.), cert. denied, 107 S.Ct. 3277, 97 L.Ed.2d 782 (1987). To determine whether the defendant was prejudiced by counsel's failure to raise these issues, the court must determine the merits of each issue (but only in the context of procedural default).

Defendant was charged in this case with driving under the influence in violation of section 316.193, Florida Statutes, and Title 18 U.S.C. §§ 7 and 13. Title 18 U.S.C. § 7 defines the special maritime and territorial jurisdiction of the United States. The Assimilated Crimes Act ("ACA"), title 18 U.S.C. § 13(a), provides as follows:

> Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title, or on, above, or below any portion of the territorial sea of the United States not within the jurisdiction of any State, Commonwealth, territory, possession, or district is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and *subject to a like punishment*.

18 U.S.C. § 13(a) (emphasis added). Section 316.193(2)(b)3, Florida Statutes provides that a person guilty of a fourth or subsequent violation of driving under the influence commits a felony of the third degree. Such a felony is punishable, in accordance with § 775.082(3)(d) by a term of imprisonment not exceeding 5 years. Section 316.193(2)(b)3 also provides for a mandatory fine of not less than $1,000. The maximum fine is $5,000.

Section 775.083(1)(d), Florida Statutes. In this case, the district court imposed the maximum term of imprisonment applicable under Florida law. The defendant now contends that this sentence was excessive, because it was beyond the sentence he would have received had he been sentenced under the Florida Criminal Punishment Code. However, although 18 U.S.C. § 13 states that a defendant coming before a federal court should receive a "like punishment," in accordance with federal guidelines and statutes, this is not necessarily a sentence identical to what he would have received in state court. *United States v. Teran*, 98 F.3d 831, 834 (5th Cir. 1996).

The defendant's presentence investigation report referenced § 2X5.1 of the United States Sentencing Guidelines, which provides:

> If the offense is a felony or Class A misdemeanor for which no guideline expressly has been promulgated, apply the most analogous offense guideline. If there is not a sufficiently analogous guideline, the provisions of 18 U.S.C. § 3553(b) shall control, except that any guidelines and policy statements that can be applied meaningfully in the absence of a Chapter Two offense guideline shall remain applicable.

§ 2X5.1, U.S.S.G. The commentary background to this section notes that many assimilative crimes are not specifically provided for in the guidelines. Title 18 U.S.C. § 3551(a) provides that:

> Except as otherwise specifically provided, a defendant who has been found guilty of an offense described in any Federal statute, including sections 13 and 1153 of this title, . . . , shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case.

18 U.S.C. § 3551(a); see also, U.S.S.G. § 2X5.1, comment. ("The sentencing guidelines apply to convictions under 18 U.S.C. § 13."). Federal courts are bound to apply a sentence within the minimum and maximum range set forth by state law, but the actual sentence within that range is determined in accordance with the federal guidelines and statutes. See *e.g., United States v. Queensborough*, 227 F.3d 149, 159 (3rd Cir. 2000) ("Courts have interpreted 'like punishment' to mean that state law sets the minimum and maximum

punishment while the federal sentencing guidelines should be used to determine the actual sentence within that range."); *United States v. Teran*, 98 F.3d 831, 834 (5th Cir. 1996) (state law provides the range of punishment, but in areas left to discretion of a state judge, federal sentencing guidelines are used) (citing *United States v. Marmolejo*, 915 F.2d 981, 984 (5th Cir. 1990)); *United States v. Young*, 916 F.2d 147, 150 (4th Cir. 1990) ("[T]he 'like punishment' requirement of the Assimilative Crimes Act mandates that federal court sentences for assimilated crimes fall within the minimum and maximum terms established by state law, and that within this range of discretion federal judges should apply the Sentencing Guidelines to the extent possible.") (citing *United States v. Garcia*, 893 F.2d 250 (10th Cir. 1989); *United States v. Leake*, 908 F.2d 550 (9th Cir. 1990)); *United States v. Devenport*, 131 F.3d 604, 620 (7th Cir. 1997) (Section 13(b) authorizes federal judges to impose the same range of penalties, under the "like punishment" clause of § 13(a), that are available in state criminal DUI proceedings.); *cf. United States v. Norquay*, 905 F.2d 1157, 1161 (8th Cir. 1990) ("the Major Crimes Act [requires] only that the sentence imposed for burglary fall within the minimum, if any, and maximum sentence established by state law....Within that range, the sentence should be calculated according to the Federal Sentencing Guidelines."). The fact that a case is "not a guidelines case" simply is an indication of whether the offense is one for which a specific guideline has been promulgated. And, the fact that a specific guideline has not been promulgated for a given offense, such as in this case felony DUI, does not mean that the guidelines are ignored. Therefore, the court was not obliged to apply the Florida Criminal Punishment Code, and counsel was not ineffective for failing to make this objection.

Defendant's sentence was imposed based on consideration of both the state statutory maximum and factors set forth under federal law. Title 18 U.S.C. § 3553(a), which sets forth guidance to district courts for sentencing, provides in pertinent part:

> (a) Factors to be considered in imposing a sentence.--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
>    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>    (B) to afford adequate deterrence to criminal conduct;
>    (C) to protect the public from further crimes of the defendant; and
>    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available.

18 U.S.C. § 3553(a).  In this case, it was apparent from the court's oral pronouncement of sentencing that it considered those factors.  In addressing the defendant the court noted its "obligation to the public whose lives you put at risk every time you get behind the wheel when you are drunk," and that drunk driving is "not to be taken lightly."  (Doc. 26 at 7).  After pronouncing sentence the court stated it had "fully considered all of the factors in this case and determined that it's necessary for the protection of the public" and that the sentence "meets the goals of punishment and hopefully [would] deter anyone else." (*Id.*). The sentencing judge reiterated that the sentence would protect the public at least for the period of defendant's incarceration because "[defendant's] record suggests that it was not likely that this would end here." (Doc. 26 at 7-8).  Defendant suggests in the instant motion that his sentence was excessive.  Given that he inexplicably served a total of only four days jail time for his six prior DUI convictions, his surprise and dismay are understandable, but a defendant's disappointment with his sentence is not grounds for reversal.  Regardless of whether another court might have sentenced defendant differently, the bottom line is that his sentence was within the statutory maximum set by state law and was therefore legal.

Because of this, to the extent defendant attempts to claim a *Booker*[3] violation, his claim also fails.

Lastly, defendant maintains that the court's imposition of a three year period of supervised release with conditions was not authorized. Title 18 U.S.C. § 3583(a) provides authority for imposing a term of supervised release as part of a sentence, although a term of supervised release is not mandatory. Supervised release is not considered to be a part of the incarceration portion of a sentence and therefore is not limited by the statutory maximum term of incarceration. *United States v. Pierce*, 75 F.3d 173, 177-18 (4th Cir. 1996) (citing *United States v. Jamison*, 934 F.2d 371, 373-75 (D.C.Cir.1991)). Instead, "supervised release is to be imposed in addition to any incarceration authorized by a particular substantive criminal statute" because Congress has indicated that "'the question whether the defendant will be supervised following his term of imprisonment is dependent on whether the judge concludes that he needs supervision.'" *Id.* (Quoting *United States v. Montenegro-Rojo*, 908 F.2d 425, 432-33 (9th Cir. 1990) (quoting S.Rep. No. 225, 98th Cong., 2d Sess. 123 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3306)). Therefore, the imposition of a term of supervised release to be served following the defendant's release from prison is not improper. *United States v. Burke*, 113 F.3d 211 (11th Cir. 1997) (adopting reasoning set forth in *Pierce*); see also *United States v. Engelhorn,* 122 F.3d 508, 510 (8th Cir. 1997) (same); *United States v. Gaskell*, 134 F.3d 1039, 1044 (11th Cir. 1998) ("federal judges sentencing under the ACA may exceed the state statutory maximum term for a sentence of probation when necessary to effectuate the policies behind the federal probation statutes").

Defendant argues that the Supreme Court's holding in *Johnson v. United States*, 529 U.S. 694, 120 S.Ct. 1795, 146 L.Ed.2d 727 (2000) effectively overrules the

---

[3] *United States v. Booker,* 125 S.Ct. 738, 2005 WL 50108 (2005). In *Booker*, the Court held that the mandatory nature of the federal guidelines rendered them incompatible with the Sixth Amendment's guarantee to the right to a jury trial. This was widely viewed as an extension of the holding in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 2362-63, 147 L.Ed.2d 435 (2000), that any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. Here there was no requirement for a finding by either the court or a jury based on defendant's guilty plea.

aforementioned cases and supports his position. *Johnson*, however, is inapposite. In that case, the Court considered whether upon revocation of supervised release and reimprisonment an additional term of supervised release could be imposed. It held that sanctions for revocation of probation are part of the original offense, rather than separate offenses in and of themselves, and therefore to impose an additional term of supervised release, under the facts of that case, would be an improper retroactive application of 18 U.S.C. § 3583(h) and a violation of the Ex Post Facto Clause. That is not what happened here.

For the forgoing reasons, counsel was not ineffective for failing to challenge either the five year sentence or the three year term of supervised release, either before the district court or on appeal. Defendant has not established that any objection by counsel would have led to a lesser sentence. See *Glover v. United States*, 531 U.S. 198, 203-04, 121 S.Ct. 696, 700-01, 148 L.Ed.2d 604 (2001).

Based on the foregoing, it is respectfully RECOMMENDED:

The motion to vacate, set aside, or correct sentence (doc. 24) be DENIED.

At Pensacola, Florida, this 27th day of September, 2005.

/s/ *Miles Davis*
**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy thereof. A copy of objections shall be served upon all other parties. Failure to object may limit the scope of appellate review of factual findings. See 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).

*Case No: 3:03cr126/LAC; 3:04cv454/LAC/MD*